UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID LEE ONSTOTT,

       Petitioner,

v.                                 Case No.  8:12-cv-2695-T-17EAJ

SECRETARY, DEPT. OF CORRECTIONS,

       Respondent.

_____

### ORDER

This cause is before the Court on Petitioner David Onstott's 28 U.S.C. § 2254 petition. Onstott is proceeding on his amended petition (hereinafter "Petition or "petition") (Doc. 8).  Onstott challenges his 2007 judgment of conviction for murder arising out of the Thirteenth Judicial Circuit, Hillsborough County, Florida in case no. 2D08-4268.

A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

### PROCEDURAL HISTORY

Petitioner was found guilty of Second Degree Murder and misdemeanor battery. (Exhs. 17, 18).  A notice of appeal was filed on August 22, 2008; Case No. 2D08-4268. (Exh. 001). Defense counsel filed an initial brief with the Second District Court of Appeal on or about July 21, 2009 and raised six issues on appeal. (Exh. 002).

The State filed its answer brief on October 20, 2009. (Exh. 003). On November 30, 2009, Onstott filed his reply brief. (Exh. 004). On March 5, 2010, the Second District Court of Appeal affirmed per curiam. The opinion is cited at 29 So. 3d 1128 (Fla. 2d DCA

2010)(table). (Exh. 005). The Mandate issued March 30, 2010. (Exh. 006).

On or about March 23, 2011, Petitioner filed a motion for postconviction relief, raising five grounds for relief. (Exh. 007). On May 6, 2011, Petitioner filed a motion to supplement motion for post conviction relief. (Exh. 008). On May 18, 2011, the trial court filed its order dismissing without prejudice, in part, and reserving ruling in part, to motion for post conviction relief and motion to supplement motion for post conviction relief. (Exh. 009). On June 13, 2011, Petitioner filed his motion to amend the motion for post conviction relief. (Exh. 010).

On June 22, 2011, the trial court filed its order to respond, in part, and denying with prejudice, in part, to motion for post conviction relief, motion to supplement motion for post conviction relief, motion to supplement motion for post conviction relief and motion to amend motion for post conviction relief. (Exh. 011). On August 19, 2011, the State filed its response to the Court's order to respond. (Exh. 012). On September 7, 2011, the trial court filed its Order denying Onstott's motion for post conviction relief, motion to supplement motion for post conviction relief and motion to amend motion for post conviction relief. (Exh. 013).

On September 21, 2011, Petitioner filed his notice of appeal, Case No. 2D11-6332. (Exh. 014). The State filed its summary letter on January 18, 2012. (Exh. 015). The Second District Court of Appeal affirmed per curiam on September 28, 2012. The opinion is cited at 99 So. 3d 955 (Fla. 2d DCA 2012)(table). (Exh. 016). The Mandate issued November 2, 2012. (Exh. 017)(case docket sheet).

Onstott delivered the present petition to officials at Suwannee Correctional Institution for mailing on November 26, 2012.  The petition is timely.

## STANDARDS OF REVIEW

### Federal Question

Title 28 U.S.C. section 2254(a) explicitly requires a federal court to entertain an application for writ of habeas corpus only when the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Wainwright v. Goode*, 464 U.S. 78, 83 (1983) (citing *Engle v. Isaac*, 457 U.S. 1141 (1982)). Even when a petition involving state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Willeford v. Estelle,* 538 F.2d 1194, 1196-98 (5th Cir. 1976).

### Exhaustion of State Court Remedies

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. 28 U.S.C. § 2254(b),(c). The petitioner must "fairly present[]" every issue raised to the state's highest court, either on direct appeal or on collateral review. *Picard v. Connor*, 404 U.S. 270, 275 (1971). To properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

A petitioner may be procedurally defaulted from raising claims in a federal habeas petition if he was procedurally defaulted from raising them in state court. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule. When a state court correctly

applies a procedural default principle of state law, federal courts must abide by the state court decision but only if the state rule is regularly followed[.] *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006).

There are two limited exceptions to the procedural default doctrine. First, a petitioner must show both "cause" for the default and actual "prejudice" from the claimed error. *House v. Bell*, 547 U.S. 518, 536-37 (2006). The "cause" excusing the procedural default must result from some objective factor external to the petitioner that prevented him from raising the claim and which cannot be fairly attributable to his own conduct. *Murray v. Carrier*, 477 U.S. 478 (1986). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted).

The second exception is only utilized under extraordinary circumstances. A petitioner may assert a fundamental miscarriage of justice resulted in a constitutional violation because he is actually innocent. *Carrier*, 477 U.S. at 495-96. This concerns a petitioner's "actual" innocence rather than "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001). A petitioner must "show that it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence." *Id.* at 324.

### Deferential Review

A federal court must afford a high level of deference to the state court's decision. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). AEDPA modified federal the habeas court's role in reviewing state prisoner applications in order to prevent retrials and to ensure state-court convictions are properly enforced. *Bell v. Cone*, 535 U.S. 685, 693

(2002). Section 2254(d) forbids federal courts from granting habeas relief for claims that previously were "adjudicated on the merits" in state court, unless the petition can establish the adjudication "resulted in a decision contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2). When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed the state court adjudicated the claim on the merits. *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011). Where the state court does explain its reasoning, that decision receives AEDPA deference even if the state court fails to cite Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002).

Federal review is limited to the record that was before the state court that adjudicated the claim. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that resulted in a decision contrary to, or involved an unreasonable application of, established law. Thus, the record under review is limited to the record in existence at that time. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398–1401 (2011). The federal court will presume the correctness of state court findings of fact, unless the petitioner can rebut them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### DISCUSSION

Petitioner raises 6 grounds in his federal habeas petition:

1) MY CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT ERRED IN FAILING TO SUPPRESSS THE STATEMENTS MR. ONSTOTT MADE TO NURSE ELIZABETH MARTINEZ, DETECTIVE LEWIS AND FORMER DEPUTY BRYAN HERNDON, AND FAILEDTO SUPPRESS ALL STATEMENTS HE MADE TO HIS MOTHER (CONTRARY TO HIS 4TH,

5TH, 6TH, AND 14TH AMENDMENT RIGHTS).

2) MY CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT ERRED IN ALLOWING THE STATE TO USE A TRANSCRIPT AS AN AID[] TO UNDERSTAND THE CONVERSATION BETWEEN MR. ONSTOTT AND HIS MOTHER, AS IT WAS PREJUDICIAL AND DENIED MR. ONSTOTT DUE PROCESS (CONTARY TO HIS 4TH, 5TH, 6TH, AND 14TH AMENDMENT RIGHTS.

3) MY CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT ERRED IN GRANTING THE STATE'S PRE-TRIAL MOTION IN LIMINE AND PROHIBITED THE TESTIMONY OF TONY PALINSKY AND RONNIE HERRERA TO TESTIFY BEFORE THE JURY (CONTRARY TO HIS 4TH, 5TH, 6TH, AND 14TH AMENDMENT RIGHTS).

4) MY CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT ERRED IN DENYING MY ATTORNEY'S MOTION FOR MISTRIAL WHEN THE STATE DURING CLOSING ARGUMENT ARGUED THAT MR. ONSTOTT "DOESN'T ACCOUNT" FOR CERTAIN MATTERS, WHICH A DIRECT REFERENCE TO MY FIFTH AMENDMENT RIGHT TO REMAIN SILENT, (CONTRARY TO HIS 4TH, 5TH, 6TH, AND 14TH AMENDMENT RIGHTS).

5) MY CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW WERE VIOLATED WHEN COUNSEL RPOVIDED INEFFECTIVE ASSISTANCE OF COUNSEL AS DEFINED BY THE UNITED SUPREME COURT IN STRICKLAND V. WASHINGTON, 104 S.CT. 2052 (1984) (CONTRARY TO HIS 4TH, 5TH, 6TH, 8TH, AND 14TH AMENDMENT RIGHTS).

6) MY CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL AS DEFINED BY THE UNITED SUPREME COURT IN STRICKLAND V. WASHINGTON, 104 S.CT. 2052 (1984). COUNSEL FAILED TO OBJECT TO JURY INSTRUCTION WHICH INCLUDED THE OFFENSE [OF] AGGRAVATED CHILD ABUSE.

Upon AEDPA review, a federal court must afford a high level of deference to the state court's decision. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). AEDPA modified federal habeas court's role in reviewing state prisoner applications in order to prevent retrials and to ensure state-court convictions are properly enforced. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Section 2254(d) forbids federal courts from granting habeas relief for claims that previously were "adjudicated on the merits" in state court, unless the petition can establish that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2). When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits. *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011). Where the state court does explain its reasoning, that decision receives AEDPA deference even if the state court fails to cite Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002).

Federal habeas review is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. Thus, the record under review is also limited to the record in existence at that same time. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398–1401 (2011). The federal court will presume the correctness of state court findings of fact, unless the petitioner is able to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## GROUND ONE

Petitioner claims that the trial court violated his 4th, 5th, 6th and 14th Amendment rights when it failed to suppress the statements he made to Nurse Elizabeth Martinez, Detective Lewis, Deputy Brian Herndon and Petitioner's mother. To the extent Petitioner

has raised a Fourth Amendment challenge to his statements, this challenge fails under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed. 2d 1067 (1976).

In *Stone*, the Supreme Court held that a state prisoner raising a Fourth Amendment claim is not entitled to habeas corpus relief if the state has provided the prisoner "an opportunity for full and fair litigation" of his claim. *Id.*, 428 U.S. at 482, 96 S.Ct. at 3046. *See also, O'Berry v. Wainwright*, 546 F.2d 1204, 1213-14 (5th Cir.), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed. 2d 1096 (1977)("*Stone* only requires that the state provide an opportunity for full and fair adjudication of Fourth Amendment claims).

It has been held that a state court determination that a defendant has no standing to raise a Fourth Amendment claim is a resolution on the merits of his claim and may trigger the *Stone* bar to habeas relief if the state court reaches this determination after affording the prisoner a full and fair opportunity to litigate his claim. *See Terry v. Martin*, 120 F.3d 661, 664 (7th Cir. 1997), citing *Hall v. Lockhart*, 806 F.2d 165, 166 (8th Cir. 1986) (*Stone* barred the petitioner's claim where the state trial court denied the petitioner's suppression motion, in part, because he had no standing to challenge the search). The Eleventh Circuit reiterated this principle in *Bradley v. Nagle*, 212 F.3d 559 (11th Cir. 2000), where the court held:

> The Supreme Court, in *Stone v. Powell*, has held that federal courts are precluded from conducting post-conviction review of Fourth Amendment claims where state courts have provided "an opportunity for full and fair litigation" of those claims. 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed. 2d 1067 (1976).
>
> In *Stone*, the Court reasoned that, so long as a defendant has had the opportunity to present his Fourth Amendment claims to the state trial and appellate courts, the objectives of the exclusionary rule have been satisfied. This Court's predecessor has held that "full and fair consideration" in the context of the Fourth Amendment includes "at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the

facts are not in dispute." *Caver v. Alabama*, 577 F.2d 1188, 1191 (5th Cir. 1978).

*Bradley*, 212 F.3d at 564-565; *See also, Mincey v. Head*, 206 F.3d 1106, 1125-26 (11th Cir. 2000)(Because we have satisfied ourselves that Mincey had a full and fair opportunity to litigate his Fourth Amendment claim in the Georgia courts, we do not review it).

In the instant case, *Stone* clearly prevents Petitioner from raising a Fourth Amendment claim. The record in this case indicates beyond question that Petitioner received a full and fair hearing in the state trial court on his claim, and the treatment of the matter was fair and candid. *Pate v. Sec'y, Dept. of Corr.*, 2012 WL 2952450 (M.D. Fla. 2012)("The Court finds that Petitioner was afforded a full and fair opportunity to litigate and have this claim adjudicated in the state courts, and he should not be permitted to further relitigate the same issue."); *See Harris v. Dugger*, 874 F.2d 756, 761 (11th Cir. 1989). Since Petitioner does not contend that he was denied the opportunity to present facts to the trial court or to argue the claim before an appellate court, and, in fact, he did both, Petitioner's Fourth Amendment challenge must fail.

With regard to the Sixth Amendment claim, Petitioner has failed to show any basis for relief. "Moreover, an invocation of the Sixth Amendment right to counsel does not constitute an invocation of the *Miranda* right to counsel derived from the Fifth Amendment right against compelled self-incrimination." *Pate; McNeill v. Wisconsin*, 501 U.S. 171, 180-182, 111 S.Ct. 2204, 115 L.Ed. 2d 158 (1991).

With regard to Petitioner's Fifth and Fourteenth Amendment claims, again he has failed to show any basis for relief. In *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed. 2d 297 (1980), the United States Supreme Court held that only those statements

that were the product of custodial interrogation or its functional equivalent were suppressible. The Court stated the interrogation and its functional equivalent "refer [] not only to express questioning, but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. The Supreme Court found that in *Innis*, even though the defendant was in custody while being transported to the police station, he was not interrogated where the patrolmen transporting him were talking to each other and he voluntarily provided them with incriminating information.

Similarly, Onstott was not subject to express questioning or the functional equivalent of questioning when he made incriminating statements to Corporal Lewis. No violation of Onstott's Fifth Amendment right to counsel was involved because no such right attached when the statement was made. *State v. Delgadillo*, 458 So. 2d 20 (Fla. 3d DCA 1984) (although defendant invoked his *Miranda* rights when taken into custody, his subsequent spontaneous admissions made while being transported were not barred under the Fifth Amendment); *Jones v. Crosby*, 2008 WL 591043 (M.D. Fla. 2008)(Even if the agent's initial *Miranda* warning to Petitioner was insufficient, Petitioner's statements to the agent while in the car were not the product of interrogation, but were spontaneously and voluntarily made. The statements he made in the car to the agent was not a violation of Petitioner's Fifth and Fourteenth Amendment rights.).

"Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the holding in *Miranda*]." *United States v. Young*, 377 F. App'x. 965, 969 (11th Cir. 2010); *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991) (holding that "[v]oluntary and spontaneous comments by an accused ... are admissible

evidence if the comments were not made in response to government questioning."); *Barragan v. Sec'y, Dept. of Corr.*, 2010 WL 1730816 (M.D. Fla. 2010)(A spontaneous or volunteered statement of a suspect in custody is not barred by the Fifth Amendment and is admissible despite the absence of prior *Miranda* warnings.); *See United States v. Hall,* 716 F.2d 826, 830 (11th Cir. 1983) ("A district court need not suppress spontaneous remarks which are not the product of 'interrogation.'").

Since Onstott initiated the conversation with Corporal Lewis while outside smoking a cigarette, there was no *Edwards* violation with regard to this statement. *United States v. Hendrieth*, 922 F.2d 748, 751 (11th Cir. 1991)("When a defendant deliberately chooses to initiate or continue a conversation, ... the statements violate neither the Fifth Amendment right against self-incrimination nor the Sixth Amendment right to counsel."); *Kight v. State*, 512 So. 2d 922 (Fla. 1987)(although defendant invoked his *Miranda* rights, defendant initiated conversation outside the property room. Thus, defendant's unprovoked statement to the detective was admissible). Corporal Lewis never asked Onstott any questions nor did the detective attempt to elicit any response from him. They were just standing outside while Onstott was smoking a cigarette. Thus, the state trial court properly found that this statement was admissible.

Onstott further claims that his statements made to RN Elizabeth Torres should have been suppressed. Onstott was placed on suicide watch based on observations made by medical personnel, not law enforcement. (Exh. 018; V. 13, T. 843-844). Nurse Torres testified that she never prevented Onstott from any telephone or human contact while he was under observation. Nurse Torres testified that she conducted a quick medical evaluation of Onstott while the other nurse went on her break. When Nurse Torres arrived, she

approached Onstott and asked him if there were anything wrong with him. Onstott answered

that he was very worried for his mom and whatever he had to pay for his charges he was

ready for that. (Exh. 018; V. 13, T. 842).

Nurse Torres was not a law enforcement officer nor was she working as a police

agent. Nurse Torres merely was asking Onstott who was on suicide watch if anything was

wrong. This question was for medical purposes only and was not any type of interrogation.

Nurse Torres was not asked to elicit any information from Onstott regarding the crime. The

statement was volunteered by Onstott without any prompting and was not given in response

to questioning or interrogation. *Cannady, supra; Garner v. State*, 729 So. 2d 990 (Fla. 5th

DCA 1999). Nurse Torres was just doing her job by asking Onstott if anything was wrong.

The record fails to show that she was acting as a police agent. Thus, the state trial court

properly admitted the statements made to Nurse Torres.

Onstott also claims that his statements made to Deputy Brian Herndon should have

been suppressed. The Court disagrees.  Deputy Herndon testified that he escorted Onstott

into the direct observation ward since he was placed on suicide watch. Deputy Herndon took

Onstott to see the nurse. (Exh. 018; V. 13, T. 849). Deputy Herndon had direct visual

observation of Onstott from 11:30 p.m. on April 16, 2005, to 7 a.m. on April 17, 2005. (Exh.

018; V. 13, T. 850).

Deputy Herndon testified that he was not authorized to discuss any personal or jail

matters with the inmates. Onstott initiated a conversation with Deputy Herndon. Deputy

Herndon was trying to study course materials for a class he was taking and had no interest

in talking with Onstott. (Exh. 018; V. 13, T. 852). Deputy Herndon specifically told Onstott

that he did not want to talk to him. Deputy Herndon kept asking Onstott why he was talking

to him so much. Onstott kept asking the deputy what he did for personal fitness. Onstott continued to speak to the deputy. The deputy never asked him any questions nor did he make any statements which would elicit an incriminating response from Onstott. (Exh. 018; V. 13, T. 853).

Onstott continued to talk to the deputy and after a few hours he told Deputy Herndon how he killed Sarah Lunde. Deputy Herndon never prompted him nor asked him any questions. Rather, the deputy only asked Onstott why he insisted on talking to him. Onstott responded that he knew for a fact that he was not going to have a lot of time to talk so he wanted to talk now while he still could. (Exh. 018; V. 13, T. 854-856). Deputy Herndon did not know about the disappearance of Sarah Lunde and wrote Onstott's statements in his personal notebook. Deputy Herndon told State Attorney Mark Ober about the statements 11 months later. (Exh. 018; V. 13, T. 856-857).

The United States Supreme Court in *Arizona v. Mauro*, 481 U.S. 520, 107 S.Ct. 1931, 95 L.Ed. 2d 458 (1987) held:

> In deciding whether particular police conduct is interrogation, we must remember the purpose behind our decisions in *Miranda* and *Edwards*: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment. 481 U.S. at 529-30, 107 S.Ct. at 1937. Furthermore, interrogation may be express or its functional equivalent, and in determining whether police are engaging in conduct that they should know [is] reasonably likely to elicit an incriminating response, the focus is primarily upon the perceptions of the suspect, rather than the intent of the police. *Id.* at 526-27, 107 S.Ct. at 1935 (quoting *Innis*, 446 U.S. at 301, 100 S.Ct. at 1690).

The testimony clearly shows that Deputy Herndon did not want to talk to Onstott, but Onstott felt compelled to talk. Onstott initiated the conversation and continued to talk to the deputy even though the deputy repeatedly told Onstott to stop. Onstott specifically stated

that he needed to talk. It is clear that Deputy Herndon was not intending on eliciting an incriminating response. Further, looking at this from the suspect's perspective, it is evident that Onstott did not feel coerced into making incriminating statements. *Mauro, supra*; *see also Kight*, 912 So. 2d at 925-926; *Delgadillo*, 458 So. 2d at 21-22. Moreover, the fact that Deputy Herndon did not immediately report Onstott's statements to his supervisor establishes that the deputy had no knowledge nor any involvement in the Lunde investigation.

None of the above-mentioned statements were made based on police-initiated conduct as suggested by Onstott. All the statements were either initiated by Onstott or spontaneously made. Thus, the state trial court properly admitted these statements.

With regard to Petitioner's statements made to his mother, the state trial court found that the first and third conversations between Onstott and his mother did not violate his right to privacy. The state trial court found significant the fact that none of the officers told Onstott or his mother that their meetings would be private. The state trial court also found significant the fact that Onstott was whispering during these meetings.

Under Florida law, "voluntary jailhouse conversations are not normally accorded the same privacy as other communications. [] The test for measurement of the Fourth Amendment right of privacy requires a determination of whether the individual had a subjective expectation of privacy and whether society recognizes that expectation as reasonable." *Boyer v. State*, 736 So. 2d 64 (Fla. 4th DCA 1999).

In *Boyer*, the defendant had no subjective expectation of privacy even though he had invoked his *Miranda* rights. Boyer asked to speak with his sister-in-law, Ann Boyer. The officers told Boyer that he could and advised him that they would leave the room and allow

him to talk to her for a few minutes. The officers monitored and recorded the conversation. The officers observed them and noticed that during their conversation they lowered their voices, moved to the edge of the table and got closer to each other. Ms. Boyer testified that the officers asked her to try to get Boyer to cooperate. *Id.* at 65.

The court in *Boyer* held that Boyer's apparent awareness of the possibility that the conversation was under surveillance belied his asserted expectation of privacy. *Boyer,* 736 So. 2d at 66. Similarly, in the instant case, the state trial court found that Onstott's whispering to his mother indicated that he had no reasonable expectation of privacy. Since a prisoner has no reasonable expectation of privacy, officers have the right to exercise constant surveillance and eavesdrop on their conversations. *Brown v. State*, 349 So. 2d 1196 (Fla. 4th DCA 1977); *See United States v. Delibro*, 347 Fed. App'x. 474, 475 (11th Cir. 2009)(no reasonable expectation of privacy when the suspect "was well aware that law enforcement could be monitoring his conversations" with his mother); *United States v. Swift*, 623 F.3d 618, 622 (8th Cir. 2010) (no reasonable expectation of privacy in a conversation with a co-defendant where the suspect "recognized the likelihood that officers were watching him"). "[S]ociety does not have an interest in preserving the confidentiality of such conversations that would override the value of disclosure." *Contra Gennusa v. Shoar*, 879 F.Supp. 2d 1337 (M.D. Fla. 2012)(Arrestee and his attorney had a reasonable expectation of privacy in attorney-client conversations held in police interview room in county sheriff's office).

Onstott also asserts that all of his conversations with his mother should have been suppressed because they amounted to interrogation which occurred after he had invoked his right to counsel. In *Arizona v. Mauro*, the defendant was advised of his *Miranda* rights

and indicated that he would not answer any questions until a lawyer was present. The defendant's wife told the officers that she wanted to speak with him. Since she was insistent, they allowed a meeting between the two of them as long as an officer was present. Moreover, a tape recorder was placed in plain sight and the brief conversation was recorded. *Id.* at 522. The Court held that the conversation between the defendant and his wife did not amount to an interrogation. The police's actions in allowing the defendant's wife to speak with him did not constitute interrogation or its functional equivalent. "Mauro was not subjected to compelling influences, psychological ploys, or direct questioning. Thus, his volunteered statements cannot properly be considered the result of police interrogation." *Id.* at 527-529.

> "The Self-incrimination Clause ... is not implicated by the admission into evidence of the physical fruit of a voluntary statement." *United States v. Patane*, 542 U.S. 630, 636, 124 S.Ct. 2620, 159 L.Ed. 2d 667 (2004). "Voluntary and spontaneous comments by an accused, even after *Miranda* rights are asserted, are admissible evidence if the comments were not made in response to government questioning." *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991) (citations omitted).

*Jones*, 2008 WL 591043 at *8. Based on the foregoing, the state trial court properly admitted the statements made during the first and third conversations between Onstott and his mother.

Ground one does not warrant habeas corpus relief.

### GROUND TWO

Petitioner asserts that his 4th, 5th, 6th and 14th rights were violated when the trial court allowed the State to use a transcript as an aid to understand the conversation between Onstott and his mother. "The general rule in Florida regarding admissibility of partially inaudible tape recordings is that partial inaudibility or unintelligibility is not a ground for

16

excluding a recording if the audible parts are relevant, authenticated, and otherwise properly admissible." *Odom v. State*, 403 So. 2d 936, 940 (Fla. 1981). "Such recordings are admissible unless the inaudible and intelligible portions are so substantial as to deprive the audible portions of relevance." *Martinez v. State*, 761 So. 2d 1074 (Fla. 2000).

The general law in Florida is that a jury "may view an accurate transcript of an admitted tape recording as an aid in understanding the tape so long as the unadmitted transcript does not go back to the jury room or become a focal point of the trial." *Martinez*, 761 So. 2d at 1083-84. "It is well settled that the use of "demonstrative devices to aid the jury's comprehension is well within the court's discretion." *McCoy v. State*, 853 So. 2d 396 (Fla. 2003).

Questions of state law and procedure "rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053-54 (11th Cir. 1983)). Habeas review of a state law claim is therefore precluded if no due process violations or facts indicating such violations are alleged. This limitation is of equal force when a petition involving state law issues is "couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)(quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)).

Petitioner asserts that the State's version of the recorded conversation between Petitioner and his mother was inaccurate because it transcribed Petitioner stating "'cause I killed her" to his mother and he claims the statement was inaudible. The state trial court set forth the proper safeguards stated in *Martinez*.

The ideal procedure is to have the parties stipulate to a transcript. The *Martinez* Court held that if the parties cannot agree, the "second best alternative is for the trial court to make a pretrial determination of accuracy by reading the transcript against the tapes to ascertain whether the transcript is accurate." Here, the prosecutor and defense counsel could not agree on the accuracy of the transcript. The state trial court then followed this second alternative. (Exh. 018; R. 4178-4179).

A hearing was held on Petitioner's motion and the state trial court listened to the recording against the State's transcript. (Exh. 018; R. 4171-4195). The transcript was prepared by an official court reporter, not by any law enforcement personnel. (Exh. 018; R. 4179). Petitioner argues that the state trial court erred in allowing the jury to only review the State's version of the transcript.

*Martinez* holds that a third alternative is to present the jury with two transcripts containing both sides' versions and to let the jury determine which is more accurate. It appears from the holding that the court prefers the first two alternatives. Defense counsel even stated at the hearing that giving the jury two versions of the transcript "would be [his] least favorite thing to do."

> Simply because what you'd have is the jury presumably listening to a recording while they've got, for example, the State's transcript in one hand and my transcript in another hand because I wouldn't necessarily agree or want them to hear the recording twice. And I'm not sure that the jury trying to listen to the recording while they are looking from my transcript to the State's transcript is the best way to go. But that's, you know, will ultimately be your decision.

(Exh. 018; R. 4172).

If the parties cannot agree, the best option is to have the court make an independent determination of accuracy by reading the transcript against the tape, which is what occurred

in the instant case. *Martinez* further suggests that if there is no stipulation as to the transcript's accuracy, "trial courts should give a cautionary instruction to the jury regarding the limited use to be made of the transcript." *Id.* at 1086.

After listening to the recording and viewing the transcript the state trial court held another hearing on Petitioner's motion. (Exh. 018; R. 4209-4213). The state trial court found as follows:

> …you were present in my chambers as was Mr. Pruner with your associates and we listened to particularly three areas that, um, were considered to be unintelligible or labeled by you as unintelligible and upon listening to them, referring to the transcript, page 491, line 11, I found that, it was not unintelligible and it could be listened to and would remain. Page 496, line 12 was not unintelligible and could be played. I think there is one more.
>
> MR. PRUNER: I think it is 510, Your Honor.
>
> THE COURT: And on page 510, line 22, with the exception of the word "I'm", I apostrophe M, it was not unintelligible and would be played.

(Exh. 018; R. 4209-4210).

The state trial court stated that it would give a standard jury instruction with regard to transcripts supplied to jurors. The court indicated that it would advise the jury to rely on what they hear and not what they read. The state trial court indicated that it was taking the motion under advisement and would rule after it had an opportunity to read through the cases and motion more thoroughly. (Exh. 018; R. 4213). The state trial court subsequently denied Petitioner's motion. (Exh. 018; T. 1634).

At trial, the court reporter was instructed to transcribe what she heard on the recording rather than using a transcript which was not in evidence.[1] (Exh. 018; T. 1636). The

---

[1] The court reporter transcribed after only listening to the recording during the trial, "'cause I killer her." (Exh. 018; T. 1658).

state trial court instructed the jury:

> Ladies and Gentlemen, I again remind you, the recordings themselves are the evidence and the transcripts are being provided to you only as a guide to help you follow as you listen to the recordings.
>
> Again, the transcripts are not evidence of what was actually said or who said it. Again, if you notice any difference between what you hear on the recordings and what you read in the transcripts you must rely on what you hear, not what you read.

(Exh. 018; T. 1637-1638). This instruction was entirely appropriate. *U.S. v. Trent*, 2007 WL 2916322 (M.D. Fla. 2007)("…the jury was instructed that the transcript was to be considered by them only as an aid to assist them in following the audio recording and that they must rely primarily on the audio recording. The transcripts were properly considered by the jury as an aid."); *U.S. v. Cruz*, 765 F.2d 1020, 1023 (11th Cir. 1985); *U.S. v. Onori*, 535 F.2d 938, 947-949 (5th Cir. 1976). Petitioner has failed to show any abuse of discretion. *McCoy,* 853 So. 2d at 405.

Even if it were error for the trial court not to also supply the jury with defense's version of the transcript, the error was harmless. *Curry v. McNeil*, 2008 WL 5157516 (N.D. Fla. 2008) (Petitioner has failed to show that the use of audio recording had a substantial and injurious effect upon the jury's verdict. If there were any constitutional error, it was harmless). Petitioner confessed to killing the victim to Deputy Herndon. Any error would not have affected the verdict in light of the permissible evidence which was before the jury. *Holland v. Tucker*, 854 F.Supp. 2d 1229 (S.D. Fla. 2012)("The Florida Supreme Court did not determine that the trial court's admission of the videotape was not without error. Indeed, the court specifically found it was error, but it found that error was harmless beyond a reasonable doubt because it did not affect the jury's verdict. The record supports that

conclusion.").

## GROUND THREE

Petitioner asserts that this 4th, 5th, 6th, 8th and 14th Amendment rights were violated when the trial court excluded the testimony of Tony Palinsky and Ronnie Herrera. The State filed a motion in limine requesting that the trial court preclude Petitioner from admitting testimony regarding the victim's alleged past behavior which is irrelevant and would substantially cause prejudice to the State. At the hearing, the defense failed to show how the victim's past behavior had any connection or relevance to the crime. Testimony regarding condoms, past sexual activity and behavioral problems serve nothing except to cast negative aspersions on her character.

In *Nevada v. Jackson*, —-- U.S. ----, 133 S.Ct. 1990 (2013), the Supreme Court recently stated:

> "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity
> to present a complete defense,'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106
> S.Ct. 2142, 90 L.Ed. 2d 636 (1986)(quoting *California v. Trombetta*, 467 U.S.
> 479, 485, 104 S.Ct. 2528, 81 L.Ed. 2d 413 (1984)), but we have also
> recognized that " 'state and federal rulemakers have broad latitude under the
> Constitution to establish rules excluding evidence from criminal trials.'"
> *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed. 2d
> 503 (2006)(quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct.
> 1261, 140 L.Ed. 2d 413 (1998)). Only rarely have we held that the right to
> present a complete defense was violated by the exclusion of defense
> evidence under a state rule of evidence. *See* 547 U.S. at 331, 126 S.Ct. 1727
> (rule did not rationally serve any discernible purpose); Rock v. Arkansas, 483
> U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed. 2d 37 (1987)(rule arbitrary); *Chambers
> v. Mississippi*, 410 U.S. 284, 302–303, 93 S.Ct. 1038, 35 L.Ed. 2d 297 (1973)
> (State did not even attempt to explain the reason for its rule); *Washington v.
> Texas*, 388 U.S. 14, 22, 87 S.Ct. 1920, 18 L.Ed. 2d 1019 (1967)(rule could not
> be rationally defended).

*Id.* at 1993.

Petitioner has failed to establish a legally sufficient reason to overcome Florida's rape

shield statute in this case. *State v. Adderly*, 803 So. 2d 760 (Fla. 3d DCA 2001).

> Specifically with regard to sexual battery cases, the Supreme Court has held that the privacy rights of rape victims are sufficiently important to justify some limitations on the accused's right to confrontation. *Michigan v. Lucas*, 500 U.S.145, 149–50, 111 S.Ct. 1743, 114 L.Ed. 2d 205 (1991)("[Rape shield statutes] are a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy."). The Court further held that excluding marginally relevant evidence of prior sexual experience or activity is a permissible limitation on the defendant's right to confrontation. *See id.*, 500 U.S. at 149.

See *Erwin v. Secretary, Dep't of Corr.*, 2013 WL 790983 (N.D. Fla. 2013).

This is not a case dealing with a consent issue nor is it a case where the victim is seeking to hide or preserve a relationship or incident which gives rise to a motive to fabricate. *Esteban v. State*, 967 So. 2d 1095 (Fla. 4th DCA 2007). Petitioner argues that the victim's alleged sexual history and past behavior ultimately led to her death.

If this Court accepts Petitioner's argument, the rape shield law would have little effect because a defendant could argue that a victim's prior sexual conduct was a reason she "met up with foul play." *Esteban,* 967 So. 2d at 1099. "[T]his is precisely the type of evidence which Florida's Rape Shield Law was designed to cover." *Roberts v. State*, 510 So. 2d 885 (Fla. 1987).

Moreover, the excluded testimony did not preclude Petitioner from presenting a full and fair defense. Testimony regarding the victim's alleged possession of condoms and her past sexual history was not necessary to refute allegations that he murdered Sarah Lunde. *Roberts*, 510 So. 2d at 892 (the exclusion of irrelevant and highly prejudicial testimony in no way hindered the defendant's presentation of a complete defense). This is not a case based on victim accusations that a defendant must refute. The exclusion of this evidence did not interfere with Petitioner's confrontation rights nor did it preclude him from presenting

a full and fair defense.

Further, evidence regarding the victim's past sexual activity and that she had runaway a few times in the past was admitted at trial. Accordingly, if any error occurred it did not affect the outcome of the trial and therefore it should be considered harmless. *See Erwin*, 2013 WL 790983 at *26 ("Because the jury, through the cross-examination permitted, was exposed to facts sufficient to draw inferences relating to the victim's reliability and credibility, and the cross-examination conducted by defense counsel enabled him to make a record from which he could argue why the victim might have been motivated to fabricate, the trial court -- as affirmed by the First DCA -- did not unreasonably apply Supreme Court precedent in denying Petitioner's constitutional claims regarding the limitation of evidence of the victim's past sexual conduct with other adult men and more details of her juvenile criminal history."). Petitioner failed to demonstrate he is entitled to federal habeas relief.

## GROUND FOUR

Petitioner asserts that the trial court erred in denying his motion for mistrial based on prosecutor statements made during closing argument. Petitioner claims that the statements violated his 5th Amendment right to remain silent. This court must defer to the state court decision unless review of the record shows that decision to be unreasonable. *See Helton v. Secretary for Dept. of Corrections*, 233 F.3d 1322, 1326–27 (11th Cir. 2000).

Petitioner has failed to establish any prosecutorial misconduct.

To prevail on a claim of prosecutorial misconduct in a federal habeas corpus proceeding, a petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected he trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). *See also Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. at 643). It is not enough to show that the prosecutor's conduct or remarks were undesirable or

even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). In other words, the complained-of conduct must be so egregious as to render the entire trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. at 642–45. *See also Greer v. Miller*, 483 U.S. 756, 765 (1987) ("To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." (internal quotations and citations omitted)); *Davis v. Zant*, 36 F.3d 1538, 1545 (11 Cir. 1994) (citing *Donnelly v. DeChristoforo*, 416 U.S. at 645).

In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, *Hance v. Zant,* 696 F.2d 940 (11 Cir.), *cert. denied*, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *Williams v. Weldon*, 826 F.2d 1018, 1023 (11 Cir.), *cert. denied*, 485 U.S. 964 (1988).

*Wilson v. McNeil*, 2010 WL 6405687 (S.D. Fla. 2010)(unpublished).

The state court record shows that prosecutor never commented on Petitioner's right to remain silent. The comments related to the evidence and defendant's defense, not his silence. *Harbour v. McDonough*, 2007 WL 1120386 (N.D. Fla. 2007)("It is clear from the context of the prosecutor's comments that the manifest intent of the prosecution was not to draw attention to any silence on Petitioner's part. Furthermore, the jury could not "naturally and necessarily" infer that it was a comment on Petitioner's silence. Thus, the prosecutor's questioning during cross-examination and comments during closing argument did not constitute an improper comment on Petitioner silence."); *See United States v. Serrano*, 607 F.2d 1145, 1152–53 (5th Cir. 1979); *Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir. 1991)(finding meritless defendant's claim that prosecutor commented impermissibly on defendant's silence as defendant did not exercise his Fifth Amendment right to remain silent after his arrest, thus prosecutor could hardly have commented impermissibly on his silence); *See State v. Sheperd*, 479 So. 2d 106, 107 (Fla. 1985); *Ruddock v. State*, 763 So. 2d 1103

(Fla. 4th DCA 1999).

While a criminal defendant is not required to prove anything, or present a defense, where he or she mounts a defense the state is within its rights to challenge the defendant's theory of the case by referring to the evidence actually presented at trial. Petitioner complains that the prosecutor's statement, "He doesn't account for that time in a credible - in a credible manner in the statements to police" is a comment on his right to remain silent. (Exh. 018; T. 2009-2010). However, looking at the prosecutor's closing argument as a whole it is clear that the prosecutor's comments were not comments on Petitioner's right to remain silent, but rather on the evidence presented at trial. The prosecutor's argument continued:

> In his statement to police, where does he say he went that day? He said when he got home he found his cell phone missing so he went out for it and he went to three locations, three locations he says…

> …His statements to police as to his actions and whereabouts are not credible, not reliable.

(Exh. 018; T. 2011).

The prosecutor was merely poking holes in Petitioner's defense. Even if this Court finds the prosecutor's words were poorly chosen, the statement was made in reference to Petitioner's claims that the prosecutor believed were legally or factually inaccurate or logically inconsistent. Thus, even if this comment was poorly expressed, it was not improper. *Chandler v. State*, 848 So. 2d 1031 (Fla. 2003).

> A prosecutor's improper statements to the jury, however, do not alone justify habeas relief. *United States v. Young*, 470 U.S. 1, 11–12, 105 S.Ct. 1038, 1044, 84 L.Ed. 2d 1 (1985). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed. 2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed. 2d 431 (1974)). Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied: (1)the

prosecutor's comments must have been improper, and (2) the comments must have rendered the trial fundamentally unfair. *See United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991) (citations omitted); *Brooks v. Kemp*, 762 F.2d 1383, 1400 (11th Cir. 1985) (*en banc*), *vacated on other grounds*, 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed. 2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987).

In considering whether improper comments rendered a trial fundamentally unfair, the court "must determine whether the improper comments 'were so egregious as to create a reasonable probability that the outcome was changed because of them.'" *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997) (citing Brooks, 762 F.2d at 1403). "A 'reasonable probability' is one sufficient to undermine confidence in the outcome." *Id. (citing Wilson v. Kemp*, 777 F.2d 621, 623 (11th Cir. 1985)). "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair." *Id.* (citing *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986)).

*Veach v. McNeil*, 2009 WL 3464137 (N.D. Fla. 2009).

There is no reasonable probability that the outcome of Petitioner's trial was changed, as the remarks here would have had little, if any, prejudicial effect. Thus, because the state court record establishes that the prosecutor's comments, if deemed improper, had no "substantial and injurious effect or influence in determining the jury's verdict," the state court's denial of Petitioner's Fifth Amendment claim was not contrary to or an unreasonable application of Supreme Court law, and Petitioner is not entitled to federal habeas relief. *Veach*, 2009 WL 3464137 at *34.

## GROUND FIVE

Petitioner argues that defense counsel was ineffective because he failed to move for a jury instruction on the issue of jurisdiction. Under AEDPA review of ineffective assistance of counsel grounds, a petitioner must meet the two-part standard for counsel's performance established by *Strickland v. Washington*, 466 U.S. 668 (1984). The burden is on a petitioner to demonstrate that counsel's performance fell below an objective standard of

reasonableness. *Strickland*, 466 U.S. 668, 686-88 (1984). In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate 1) deficient performance by counsel and 2) prejudice to the defense. *Strickland*, 466 U.S. at 687.

In addition, because the ineffective assistance of counsel claim has been previously raised in state court (or otherwise Petitioner would not have exhausted his state remedies), the standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law, i.e., error alone is not enough. *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 785–786, 178 L.Ed. 2d 624 (2011). When faced with an ineffective assistance of counsel claim, a federal habeas court "must determine what arguments or theories supported or, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of Court." Id. at 786.

In *Richter*, the Supreme Court explained the burden of a petitioner claiming ineffective assistance of his counsel:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Richter*, 131 S.Ct. at 788 (citations omitted). If a petitioner fails to make a proper showing under one of the prongs, the Court need not consider the other prong. *Strickland*, 466 U.S. at 697. The state trial court properly denied Petitioner relief on this claim.

The state trial court found that Petitioner failed to demonstrate prejudice. The trial court found that at least one overt act was committed within Hillsborough County and thus the court had jurisdiction. (Exh. 013). Here, the evidence presented and Petitioner's confession given to Corporal Herndon of the Hillsborough County Sheriff's Office established that Petitioner killed the victim inside her home which is located in Hillsborough County and dumped her body less than one mile from her home.

**GROUND SIX**

Petitioner asserts that defense counsel was ineffective because he failed to object to the jury instruction which included the offense of aggravated child abuse. Under Florida law, the State need not charge felony murder or the underlying felony to receive a felony murder instruction. *See Crain v. State*, 894 So. 2d 59, 69 (Fla. 2005). The State proved beyond a reasonable doubt that Petitioner committed at least two separate acts of aggravated battery upon the victim. Any objection to the inclusion of aggravated child abuse would have been futile since Petitioner committed a series of acts.

Moreover, the inclusion of the aggravated child abuse instruction could not have prejudiced Petitioner as he was convicted of second degree murder, not first degree murder. Petitioner's conviction did not require proof of aggravated child abuse. The jury rejected a first degree murder conviction and returned a lesser verdict, which rebuts Petitioner's claim of prejudice and confirms that the verdict was not based on the passions of the jury. The evidence presented in the form of medical testimony regarding the victim's body was far

more graphic than the text of a jury instruction. The state trial court properly found that an objection to the inclusion of aggravated child abuse would have been futile and Petitioner failed to demonstrate prejudice since he was convicted of second degree murder, which does not require a finding of aggravated child abuse. (Exh. 013). *Thomas v. Secretary, DOC, Florida Atty. Gen.*, 2013 WL 839573 (M.D. Fla. 2013) ("[I]t would have been frivolous for counsel to object to a standard jury instruction. Counsel's failure to raise non-meritorious issues is not considered ineffective assistance of counsel."); *Freeman v. Att'y Gen. Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008)(stating "[a] lawyer cannot be deficient for failing to raise a meritless claim ....").

## CONCLUSION

None of the grounds Petitioner raises warrant habeas corpus relief.  Nothing in Petitioner's reply convinces the Court otherwise.

Accordingly, the Court orders:

That Petitioner Onstott's petition is denied.  The Clerk is directed to enter judgment against Onstott and to close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis. Petitioner is required to pay the $505.00 appellate filing

fee unless the appellate court grants Petitioner in forma pauperis status on appeal.

ORDERED at Tampa, Florida, on March 12, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
David Lee Onstott